UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARCUS D. MAYS,

                    Plaintiff,                  Case No. 1:11-cv-694

v.                                      Honorable Gordon J. Quist

UNKNOWN GORMAN et al.,

                    Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all Defendants except Defendants Gorman and Lehner. The Court will order service on Defendants Gorman and Lehner.

## Discussion

I.      Factual allegations

      Plaintiff Marcus D. Mays presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Marquette Branch Prison, though the actions he

complains of occurred while he was housed at the Ionia Maximum Correctional Facility (ICF).  He sues MDOC former Director Patricia Caruso, Prison Health Care Services, Inc. (PHS), and the following ICF employees:  Resident Unit Officers (unknown) Gorman, (unknown) Lehner and three unknown individuals; Grievance Coordinator M. Breedlove; Litigation Coordinator Aron Vroman; Assistant Deputy Warden Ericka Huss; Deputy Warden Nanette Norwood; Warden Willie O. Smith; Health Care Unit Managers Jody Labarre and an unknown party; Nurse Brian Darren; Doctor Michael Czop; Physician Assistant Michael Kinnerling; Resident Unit Manager (unknown) Emery; Assistant Resident Unit Managers M.J. Beak and an unknown person; an unknown 2-Unit a.m. Sergeant; an unknown a.m. Lieutenant; an unknown Hearings Investigator; and an unknown Inspector.

Plaintiff's allegations arise out of an alleged use of excessive force by Defendants Gorman and Lehner on September 7, 2010.  Plaintiff claims that Defendant Gorman placed him in handcuffs before transporting him from the shower area.  According to Plaintiff, the handcuffs were too tight, subjecting him to cruel and unusual punishment.  Plaintiff complained about the tightness, and Gorman allegedly responded, "[Y]ou[']re a spotty ugly fucker you[']re going to pay." (Compl., docket #1, Page ID#8.)  Defendant Lehner allegedly was present during the incident.  Lehner told Plaintiff, "[S]top running your mouth twisting the handcuff down to increase the pain."  (*Id.*)  Plaintiff alleges that he responded, "I am a grown man and have a right to my freedom of speech. F--ck you." (*Id.*)  Thereafter, Gorman allegedly rammed Plaintiff head-first into the food cart, twisting Plaintiff's arms and wrist.  Lehner allegedly twisted the handcuffs some more to inflict pain and held Plaintiff's head to the food cart.  As they came up the stairs, Gorman allegedly pushed Plaintiff head-first into the wall.  According to Plaintiff, Gorman then fabricated a major misconduct ticket, alleging that Plaintiff had assaulted Gorman.  Lehner allegedly conspired with Gorman by filing another misconduct ticket.  Plaintiff alleges that the tickets violated his right to due process.

He also alleges that Gorman and Lehner assaulted him and filed false misconduct reports in retaliation for Plaintiff's complaints about the handcuffs being too tight and earlier complaints about Gorman's and Lehner's racial harassment.

Plaintiff alleges that three other unknown unit officers were responsible for failing to prevent the assault. Plaintiff also alleges that he informed Defendants Beak and Emery about the assault, but they failed to follow procedures to investigate the problem, thereby condoning the behavior. Plaintiff further alleges that Defendant unknown Sergeant failed to adequately train and supervise Gorman and failed to protect Plaintiff from Gorman. Similarly, he alleges that Defendant unknown Lieutenant failed to supervise the unknown Sergeant in performing the Sergeant's supervisory duties. Further, Plaintiff claims that Defendant Huss failed to supervise Beak and Emery in training Gorman and Lehner. In addition, Defendant Norwood allegedly is responsibly for failing to supervise and train all employees. Plaintiff contends that Caruso and Smith were incompetent in their supervision and training of prison employees. He also alleges that Defendant Huss was aware that he had been beaten but failed to take corrective action against Lehner and Gorman.

Plaintiff apparently sought medical assistance. He contends that Defendant Kinnerling failed to follow medical norms in providing treatment because he failed to treat the large knot on Plaintiff's head and failed to order x-rays or a CT scan. Plaintiff complains that Defendant Czop was responsible under state law and MDOC policy to provide "adequate health care services," but he failed to respond to Plaintiff's complaints. He further alleges that Defendant PHS failed to adequately train Defendants Kinnerling, Darren, and Czop.

Plaintiff next alleges that Defendant Breedlove issued an erroneous and untimely grievance response at Step I, thereby depriving Plaintiff of due process. He also alleges that Defendant Vroman directed Defendant Breedlove to obstruct and delay the grievance response. In

addition, Plaintiff alleges that Defendant Smith participated in the obstruction of the grievance by failing to correct Breedlove's handling of prison grievances.

According to the complaint, an unknown hearings officer deprived Plaintiff of his due process right to appeal the major misconduct tickets.  In addition, the unknown inspector allegedly failed to perform his duty to review the videotapes and determine that Gorman and Lehner assaulted Plaintiff.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Beak, Emery, Huss, Norwood, Caruso, Smith, PHS, Czop, Breedlove, Vroman, the unknown 2-Unit Sergeant, the unknown 2-Unit Lieutenant, and the unknown Assistant Resident Unit Manager other than his claim that they failed to adequately supervise or train their employees or failed to properly investigate or resolve his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d

295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Beak, Emery, Huss, Norwood, Caruso, Smith, PHS, Czop, Breedlove, Vroman, the unknown 2-Unit Sergeant, the unknown 2-Unit Lieutenant, and the unknown Assistant Resident Unit Manager engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them for supervisory liability.

### B.    Interference with Grievance Process

To the extent that Plaintiff suggests that Defendants Breedlove and Vroman may have intentionally prevented the filing of his prison grievance, he also fails to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

In addition, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievance. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered

unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendants Breedlove and Vroman for their alleged interference with his grievances.

### C.    Conclusory Allegations

Plaintiff fails even to mention in the body of his complaint Defendant Health Care Unit Manager Labarre or the unknown Health Care Unit Manager.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").  Because Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Health Care Unit Manager Labarre and the unknown Health Care Unit Manager.

Moreover, Plaintiff's allegations against Defendants Darren and Czop are wholly conclusory.  He merely states that Defendants Darren and Czop were deliberately indifferent to his serious medical needs.  Plaintiff does not, however, provide any factual allegation to support his legal conclusion.  He does not allege that Darren or Czop had any personal involvement with treating him or whether he even sought treatment from them.  Indeed, the only health provider that Plaintiff claims to have seen was Defendant Kinnerling.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  As a consequence, Plaintiff's allegations against Darren and Czop are insufficient to state a claim against them.

**D.**     **Eighth Amendment**

Plaintiff alleges that Defendant Kinnerling was deliberately indifferent to his serious medical needs when, after looking at Plaintiff, Kinnerling did not treat the lump on his head or order x-rays.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In

other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *id.* at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not

enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff acknowledges that he was seen by Defendant Kinnerling after the incident. He complains only that Kinnerling did not treat the lump on his head or order an x-ray or CT scan. Plaintiff, however, fails to allege that he experienced any symptom other than a "large knot" on his head.   (Compl., Page ID#10.)  He does not suggest that he had other symptoms either before or since that would have warranted an x-ray or CT scan.  Moreover, it is difficult to understand how Plaintiff expected Kinnerling to "treat" a knot on his head, other than to conduct an examination of the knot and Plaintiff's other symptoms to determine whether he had a more serious injury. Kinnerling apparently concluded that Plaintiff's injury was limited to the knot on his head and that he showed no symptoms that would warrant further testing.

Plaintiff's allegations fail to demonstrate either the objective or subjective component of the deliberate indifference standard.    Plaintiff makes no allegations that would suggest that he either faced a substantial risk of serious harm or that Kinnerling was deliberately indifferent to that risk.  Instead, he appears only to disagree with Kinnerling's decision not to order further testing without identifying any symptoms warranting such testing.  Such a claim falls far short of stating an Eighth Amendment deprivation.

### E.    Misconduct Hearing

Plaintiff alleges that an unknown Hearings Officer deprived Plaintiff in some unspecified manner of Plaintiff's due process right to appeal the decision on the misconduct tickets issued by Gorman and Lehner.  A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (determining that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011.  In the absence of a demonstrated liberty interest, plaintiff has no due-process claim.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not identified any deprivation, much less a significant and atypical deprivation, arising from his convictions.  Because Plaintiff's misconduct conviction did not result in either an extension of the

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

duration of his sentence or some other atypical hardship, his due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

### F.      Investigation of Gorman and Lehner

Plaintiff complains that an unknown Inspector failed to adequately investigate the incident, despite knowing that an unknown 2-Unit Officer had killed a prisoner within the last 24 months.  He asserts that the Inspector violated MICH. DEP'T OF CORR., Policy Directive 03.03.105(B) by failing to investigate and prosecute Defendants Gorman and Lehner for assault. Plaintiff also alleges that the failure to investigate and prosecute deprived him of his right under the Eighth Amendment to be free from cruel or unusual punishment.

Plaintiff essentially complains that the unknown Inspector violated his constitutional rights because he failed to pursue a criminal prosecution of other Defendants.  A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986).  Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another.  *See Diamond*, 476 U.S. at 64-65; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).

Further, Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because a policy directive does not create a protectable liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

### G.    Remaining Defendants

The Court concludes that Plaintiff's allegations against Defendants Gorman and Lehner are sufficient to warrant service of the complaint on them.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss for failure to state a claim Defendants Caruso, Prison Health Care Services, Inc., Breedlove, Vroman, Huss, Norwood, Smith, Labarre, Darren, Czop, Kinnerling, Emery, Beak, three unknown Resident Unit Officers, an unknown Assistant Resident Unit Manager; an unknown 2-Unit a.m. Sergeant; an unknown a.m. Lieutenant; an unknown Hearings Officer; an unknown Inspector, and an unknown Health Unit Manager, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Gorman and Lehner.

An Order consistent with this Opinion will be entered.

Dated:  August 24, 2011                              _____/s/ Gordon J. Quist_____
                                                                    GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE

- 14 -