UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

______________________

MARCUS MAYS,

Plaintiff,

v.

Case No. 1:11-CV-694

PAUL GORMAN, and
MICHAEL LEHNER,

HON. GORDON J. QUIST

Defendants.
______________________/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a prisoner civil rights case brought pursuant to 42 U.S.C. § 1983. Plaintiff, Marcus Mays, has sued Defendants Paul Gorman and Michael Lehner, alleging that they used excessive force on him in violation of the Eighth Amendment to the United States Constitution. This case came before the Court for a bench trial on February 5, 2013. The Court heard testimony from witnesses and received exhibits into evidence. The case is now ready for decision.

### I. FINDINGS OF FACT

Mays is a prisoner in the Michigan Department of Corrections (MDOC). Defendants were corrections officers at the time of the alleged events. Mays claims that Defendants deprived him of his Eighth Amendment right to be free of cruel and unusual punishment by using excessive force on him. The sole issue in the trial was whether Defendants slammed Mays's head against a steel food cart and then forcibly slammed Mays against a wall, thereby causing an injury to Mays's head. Having heard and adjudged the testimony and credibility of the witnesses, and having read the relevant portions of the exhibits, this Court finds that Defendants' testimony was credible and

Mays's evidence was not credible. Therefore, judgment will be entered against Mays and in favor of Defendants. A further explanation follows.

The alleged events took place at Ionia Maximum Correctional Facility (ICF) in Ionia, Michigan, on September 7, 2010, where Mays was a prisoner in a Level V administrative segregation housing unit. Level V is the highest security level of the five-level Michigan classification system, and Level V administrative segregation is the highest level within Level V—in other words, a "supermax." Mays has a history of being combative and threatening toward corrections officers. Mays admits that he frequently verbally threatens officers. Mays has also been found guilty of 14 incidents of assault or threatening behavior in the Michigan prison system between 2008 and 2012. Defendants, therefore, had reasons for concern for their safety every time they escorted Mays from one place to another.

On September 7, 2010, Defendants conducted a "hands-on escort" of Mays from the shower to his cell in a Level V administrative segregation housing unit. A "hands-on escort" involves at least one officer holding a prisoner's handcuffs, often with one hand on the prisoner's shoulder to guide the prisoner. During the escort, after the parties had climbed the stairs to the housing unit and were within a few cells of Mays's cell, Mays attempted to turn around toward the officer rather than keeping his head facing forward. This created a security risk for the officers because Mays could either "headbutt" them, spit on them, or take another actions. Defendants had experienced such assaults by inmates before, noting that assaults often begin when a prisoner tries to "catch [an officer] off guard," by talking to or spitting on an officer. Mays succeeded in pinching Gorman's hands between Mays's handcuffs by pulling the chain Gorman was holding. Gorman immediately responded by pulling on the handcuffs to disable Mays's ability to turn around or assault Defendants. Defendants then held Mays against a wall so that Gorman could readjust his grip on Mays's handcuffs. During this time, Lehner placed one hand on Mays's head and held it against the

wall. After Gorman readjusted his grip, which was momentary, Defendants escorted Mays the remaining 20 feet or fewer to Mays's cell, where they followed security protocol in releasing him.

Defendants did not slam Mays's head into a food cart or wall so as to cause Mays pain. The Court finds the testimony of Mays's sole corroborating witness, Allen Daniel, to be incredible. Daniel is Mays's "jailhouse lawyer," who prepared Mays's Complaint. In his testimony, Daniel said that he witnessed Defendants' slamming Mays's head into the food cart. However, in a written witness statement Daniel gave shortly after the alleged incident, Daniel never mentioned Mays's head being slammed into the food cart. (See Ex. F.)

## II. CONCLUSIONS OF LAW

The legal issue before the Court is whether Defendants used excessive force in escorting Mays to his cell. To make out his claim, Mays must prove by a preponderance of the evidence the following three elements: (1) Defendants used excessive force on Mays without justification, (2) Mays suffered some injury as a result of Defendants' actions, and (3) Defendants acted under the color of state law. *See* 42 U.S.C. § 1983; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000).

The "core judicial inquiry" regarding excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088 (1986)). In determining whether the use of force was malicious, a court may "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999 (citing *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085); *accord Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010). The issue is not whether the use of force was absolutely necessary in hindsight,

but 'whether the use of force would plausibly have been thought necessary, or instead evinced such a wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occurred.'" *Griffin*, 604 F.3d at 954 (quoting *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085). The maintenance of jail security and discipline may require that prisoners be subjected to physical contact by guards. However, "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

Mays has failed to establish by a preponderance of the evidence that Defendants used excessive force. Defendants responded to a potential assault on them by Mays by holding Mays against a prison wall so that Gorman could readjust his grip on Mays's handcuffs. Mays, a known security risk with a history of threatening and combative behavior, had moved his head toward Defendants, which posed a risk to Defendants. In response, Defendants took reasonable actions to maintain order and protect themselves from harm, two valid penological goals. They did not act maliciously or "evince such wantonness ... as is tantamount to a knowing willingness" that harm to Plaintiff would occur. *Griffin*, 604 F.3d at 954.

***Spoliation***

During trial, Mays objected to Defendants' failure to produce video evidence of the alleged events. Mays produced a piece of paper containing a handwritten paragraph that Mays professed to be an MDOC policy regarding the retention of video evidence.[1] Mays testified that

[1] As read into the record, Mays's handwritten paragraph states:

> Audio/video recordings shall be [sic] made pursuant to the foregoing paragraph shall be retained in accordance with the department records retention and disposal schedule for a minimum of 3 years. However, when it is known that a lawsuit has been filed or an investigation is currently underway regarding a specific incident the recording shall be retained until completion of the investigation or litigation, including appeal.

The transcript is not yet available for this case, but this statement was checked against the court reporter's unofficial transcript.

he had copied it by hand, but did not offer a policy number or any additional information about where he obtained this information. Defendants objected to the evidence, and the Court ordered Defendants to produce any MDOC policy regarding the retention of video evidence and provide a statement of what happened to the video evidence in this case. In response, Defendants produced an affidavit from ICF Deputy Warden Nannette Norwood. Norwood attests that there is no written MDOC policy on the retention of video footage from wall mounted cameras and, due to physical storage limits, it would be impossible to store all surveillance video recorded. (Norwood Decl., Ex. A, Docket no. 109, Page ID 401.) MDOC does have a Records Retention and Disposal Schedule. (See Ex. B, Docket no. 109.) However, this schedule only covers copies of video footage that are "attached to another category of document" that would be retained, such as Critical Incident Reports. (Docket no. 109, Page ID 397; *see also id.* Ex. B.) Defendants also testified that they had no control or access to video footage.[2] Because Mays offers no other evidence of spoliation, and the surrounding circumstances do not suggest that Defendants both (1) knew the evidence was relevant to litigation *and* (2) their conduct resulted in its loss or destruction, the Court will sustain Defendant's objection to Mays's handwritten evidence. *Beaven v. United States Dept. of Justice*, 622 F.3d 540, 553–54 (6th Cir. 2010). Moreover, the purported MDOC policy offered by Mays does not contradict Norwood's affidavit. Rather, it appears consistent with Defendants' position. Thus, Mays's proffered evidence would not affect the Court's judgment in this case.

---

[2] The Court recognizes that Mays is not required to prove Defendants had direct control over the evidence. *See Beaven*, 622 F.3d at 553–54 ("[A]n adverse inference for evidence spoliation is appropriate if the Defendants 'knew the evidence was relevant to some issue at trial and ... [their culpable] conduct resulted in its loss or destruction.' This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction.") (internal citations omitted).

**CONCLUSION**

For the foregoing reasons, the Court finds for Defendants and against Plaintiff. Therefore, the Court will grant judgment in favor of Defendants.

A separate judgment will issue.

Dated: February 12, 2013

/s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE